UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LAUREL L. MURZYNSKI, individually, as Administrator of the Estate of MASON MURZYNSKI, and as Administratrix of the Estate of MARK MURZYNSKI,<br><br>*Plaintiff*,<br><br>*v.*<br><br>ERIE COUNTY, *et al.*,<br><br>*Defendants*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO.  1:15-cv-00195-BR<br><br>MEMORANDUM OPINION DENYING MOTIONS TO DISMISS BY DEFENDANTS WEXFORD HEALTH SOURCES, INC; DR. GARY PETERSON; MEGHAN LININGER, NICOLE KILBANE, MICHELLE HETRICK, ADELE BURNETT, MARJO PASSAMONTE, JENNIFER HARVEY, AND MICHELLE THOMAS |

## I. INTRODUCTION

This case concerns the jailhouse suicide of twenty-two year old Mason Murzynski. Plaintiff Laurel Murzynski brings this action against multiple Defendants individually, as Administrator of the Estate of Mason Murzynski, and as Administratrix of the Estate of Mark F. Murzynski.  The Defendants are as follows:  Erie County; Warden R. Kevin Sutter and Deputy Warden Michael Holman; Corrections Officers Julie Kaliszewski, Corporal Norfolk, John Rossi, Kevin Beil, and David Black (collectively, "Corrections Officers"); the prison's medical services provider, Wexford Health Sources, Inc. ("Wexford"); Wexford's Medical Director, Dr. Gary Peterson ("Peterson"); Wexford Employees Meghan Lininger, Nicole Kilbane, Michelle Hetrick, Adele Burnett, Marjo Passamonte, Jennifer Harvey, and Michelle Thomas (collectively, "Wexford Employees"); the prison's mental health provider, Stairways Behavioral Health ("Stairways"); and

1

Stairways Employees Sarah Parton, Andrea Zeiber, Stacey Petruso, and Frank Quinn (collectively, "Stairways Employees"). Plaintiff asserts violations of the Eighth and Fourteenth Amendment pursuant to 42 U.S.C. § 1983 against all Defendants, and state law claims of medical and corporate negligence against Defendants Wexford and Stairways. All Defendants moved to dismiss Plaintiff's Second Amended Complaint for failure to state a claim.

Presently before the Court are Motions to Dismiss by Defendants Wexford, (Doc. No. 70); Peterson, (Doc. No. 81); and Wexford Employees (Doc. No. 110). Having reviewed the parties' briefs and all other relevant material properly before the Court, the Court will DENY all Motions to Dismiss. The Court's reasoning follows.

## II. STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In deciding whether a complaint states a plausible claim for relief, "'all well-pleaded allegations of the complaint must be taken as true and interpreted in the light most favorable to the plaintiffs, and all inferences must be drawn in favor of them.'" *McTernan v. City of York, Pa.*, 577 F.3d 521, 526 (3d Cir. 2009) (quoting *Schrob v. Catterson*, 948 F.2d 1402, 1408 (3d Cir. 2004)).

In addition, the Court recognizes that plaintiffs alleging civil rights claims, like Plaintiff here, face a unique difficulty in obtaining the necessary factual details to plead their case. *See Colburn v. Upper Darby Tp.*, 838 F.2d 663, 667 (3d Cir. 1988) ("*Colburn I*") ("In reviewing the

sufficiency of civil rights complaints, we cannot avoid noting the difficulty plaintiffs and their counsel may have in attempting to accommodate the court's requirement of factual specificity with amended Fed. R. Civ. P. 11."). Even more, prison suicide cases, such as the instant action, are notably challenging for plaintiffs given that the inmate is dead, the investigation is typically not public, and discovery likely resides in defendants' exclusive control. *See id*. The Court's analysis will take these factors into account as it evaluates Plaintiff's Second Amended Complaint.

### III. BACKGROUND[1]

The following recitation assumes all facts in favor of Plaintiff. On November 12, 2014, Mason Murzynski was admitted to Erie County Prison having been sentenced for failure to pay fines. (Doc. No. 57, ¶¶ 37-38). That day, Defendant Julie Kaliszewski, a corrections officer, conducted Mason's initial intake and documented his past mental health history, recent suicidal ideations, and heroin withdrawal. (*Id.* ¶ 39). Defendant Corporal Norfolk, Kaliszewski's supervisor, also participated in Mason's intake. (*Id.* ¶ 40). Following Mason's initial intake, Defendant Meghan Lininger, a Wexford employee, medically evaluated Mason for his heroin withdrawal. (*Id.* ¶ 43). Lininger concluded that Mason was not a suicide risk, yet noted that he was under the influence during her questioning and that he had undergone outpatient mental health treatment in the past. (*Id.*). Lininger placed Mason on a drug and alcohol watch. (*Id.*).

The following day, November 13, 2014, the Honorable Magistrate Judge Mark R. Krahe contacted the prison and spoke to Edward Wilson, a prison official. (*Id.* ¶¶ 45-46). Magistrate

---

[1] Defendants Wexford Employees attach two exhibits to their Motion to Dismiss to present a different factual account than Plaintiff's Second Amended Complaint. (Doc. Nos. 110-2 & 110-3). On July 8, 2016, Plaintiff moved to strike Exhibit A and Exhibit B from Defendants Wexford Employees' Motion to Dismiss. (Doc. No. 117). Given that "all well-pleaded allegations of the complaint must be taken as true and interpreted in the light most favorable to the plaintiff[]," *McTernan*, 577 F.3d at 526, the Court need not resolve factual discrepancies at this stage. The Court therefore GRANTS Plaintiff's Motion to Strike, striking Exhibit A and Exhibit B from Defendants Wexford Employees' Motion to Dismiss.

Judge Krahe informed Wilson that Mason, at his sentencing, had threatened to kill himself. (*Id.*). According to prison records, Wilson notified the prison's mental health department about Magistrate Judge Krahe's call, and gave copies of commitment paperwork directly to Defendant David Black, a corrections officer. (*Id.* ¶ 46). According to Plaintiff, despite receiving this information, Defendants Stairways and Stairways Employees failed to conduct adequate mental health assessments of Mason and failed to place him on a Level I Suicide Watch. (*Id.* ¶¶ 49-51). Again, according to Plaintiff, Defendants Wexford and Wexford Employees also received the information from Magistrate Judge Krahe but evaluated Mason only for his opiate withdrawals. (*Id.* ¶ 53). Ultimately, Mason was not placed on a Level I Suicide Watch. (*Id.* ¶ 59). Rather, Mason was placed on the B cell block, which Defendants John Rossi and Kevin Beil, corrections officers, were responsible for monitoring. (*Id.* ¶¶ 62, 65). On November 15, 2014, Mason hung himself with the strings of his laundry bag. (*Id.* ¶ 69).

Plaintiff initiated this action on August 5, 2015. (Doc. No. 1). On May 13, 2016, Plaintiff filed a Second Amended Complaint. (Doc. No. 57). On May 19, 2016, Defendant Wexford filed its Motion to Dismiss, (Doc. No. 70); On May 25, 2016, Defendant Peterson filed his Motion to Dismiss, (Doc. No. 81); and on June 17, 2016, Defendants Wexford Employees filed their Motion to Dismiss, (Doc. No. 110).

## IV.  ANALYSIS

*A. Plaintiff's 42 U.S.C. § 1983 Claims.*

Section 1983 provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

4

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff "must demonstrate a violation of a right secured by the Constitution and the laws of the United States [and] that the alleged deprivation was committed by a person acting under color of state law." *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996) (internal quotation marks omitted).[2]

In a § 1983 action, courts must first "identify the exact contours of the underlying right said to have been violated." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998). Here, as discussed above, Plaintiff brings § 1983 claims alleging violations of the Eighth and Fourteenth Amendments; that is, Plaintiff alleges that Defendants violated Mason's (1) substantive right to be free from cruel and unusual punishment and to be free from punishment prior to adjudication without due process of law under the Eighth and Fourteenth Amendments, respectively; (2) right to procedural due process under the Fourteenth Amendment; and (3) substantive constitutional rights under the Fourteenth Amendment.

Plaintiff's § 1983 claims will be analyzed under the Eighth Amendment. *See United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) ("[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process."). To state a cognizable claim under the Eighth Amendment, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The meaning of "deliberate indifference," however, varies according to its application to particular defendants.

---

[2] Defendants Wexford, Peterson, and Wexford Employees do not contest that they were acting under color of state law when providing medical services to Mason. Accordingly, the Court only examines whether Defendants violated Mason's constitutional rights.

1. Plaintiff's 42 U.S.C. § 1983 Claim against Defendant Wexford (Count IV).

The Court examines Plaintiff's § 1983 claim against Defendant Wexford under municipal liability standards. *See Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583-86 (3d Cir. 2003) (analyzing § 1983 claim against prison's medical services provider under municipal liability rubric). A municipality is liable under § 1983 "when a plaintiff can demonstrate that the municipality itself, through the implementation of a municipal policy or custom, causes a constitutional violation." *Colburn v. Upper Darby Tp.*, 946 F.2d 1017, 1027 (3d Cir. 1991) ("*Colburn II*") (citing *Monell v. N.Y. City Dep't of Social Servs.*, 436 U.S. 658, 691-95 (1978)). In *Natale v. Camden County Correctional Facility*, the Third Circuit defined the terms "policy" and "custom," stating:

> A policy is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict. A custom is an act that has not been formally approved by the appropriate decisionmaker, but that is so widespread as to have the force of law.

318 F.3d at 584 (internal quotation marks and citations omitted). The "three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983," are as follows:

> The first is where the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy. The second occurs where no rule has been announced as policy but federal law has been violated by an act of the policymaker itself. Finally, a policy or custom may also exist where the policymaker has failed to act affirmatively at all, though the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.

*Id.* (internal quotation marks and citations omitted).

In Count IV, Plaintiff asserts that Defendant Wexford, pursuant to multiple policies and customs, was deliberately indifferent to Mason's serious medical needs, and thus violated his Eighth Amendment rights. (Doc. No. 57, ¶¶ 119(a)-(p)). Plaintiff pleads as follows: Defendant Wexford maintained a policy that inadequately supervised inmates with serious medical needs; Defendant Wexford failed to require timely medical examinations of inmates with suicidal vulnerabilities; Defendant Wexford failed to obtain medical records and/or consult with medical providers of inmates with suicidal vulnerabilities; and Defendant Wexford failed to train, supervise, and discipline its employees in the proper identification and protection of inmates with suicidal vulnerabilities. (*Id.*).

In response, Defendant Wexford argues that Plaintiff's allegations are conclusory and that Plaintiff fails to allege a pattern of constitutional violations. (Doc. No. 71, at 6-7). Specifically, Defendant contends that Plaintiff's allegation that "[p]rior inmates lacking Suicide Watch have successfully committed suicide before Mason Murzynski's death at Erie County Prison" is not enough to state a municipal liability claim. (*Id.*). That sole allegation, Defendant argues, fails to establish when those prior incidents occurred, whether Defendant Wexford knew about those incidents, or whether Defendant Wexford was under contract with Erie County Prison during those incidents. (*Id.* at 6).

The Court is not persuaded by Defendant's arguments. The Court has already made clear that any disputed facts must be resolved in favor of Plaintiff. While the Court acknowledges that Plaintiff does not describe in detail Defendant's improper policies or customs or Defendant's connection to prior suicides at the Erie County Prison, at this stage of the case, Plaintiff is not in the position to present the requisite factual details to fully plead her claim. *See, e.g.*, *Colburn I*, 838 F.2d at 667. Accordingly, the Court finds that this issue cannot be dismissed but rather must

proceed to discovery. *See, e.g.*, *Ponzini v. Monroe Cnty*, 897 F. Supp. 2d 282, 292 (M.D. Pa. 2012) (denying motion to dismiss against municipal defendants despite lack of factual specificity regarding defendants' policies or customs).

    2. <u>Plaintiff's Request for Punitive Damages under 42 U.S.C. § 1983 against Defendant Wexford (Count IV).</u>

As part of the § 1983 action set forth in Count IV, Plaintiff seeks punitive damages against Defendant Wexford. It is well established that municipalities are immune from punitive damages in a § 1983 suit. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). That is because awarding punitive damages against a municipality only punishes the taxpayer, rather than punishing "the tortfeasor whose wrongful action was intentional or malicious." *Id.* at 266-67.

Plaintiff avers that Defendant Wexford is a corporation that provides medical care through its employees to the inmates of the Erie County Prison and that Defendant Wexford acts as agent of Erie County to provide such care. (Doc. No. 57, ¶¶ 10-11). In its Motion to Dismiss, Defendant Wexford argues that it is a municipality and thus should be immune from punitive damages. (Doc. No. 71, at 7). In her Opposition to Defendant Wexford's Motion to Dismiss, Plaintiff argues that Defendant Wexford is not a municipality, but is instead a private corporation. (Doc. No. 101, at 11). Defendant Wexford does not respond to this contention.

In accepting Plaintiff's alleged facts to be true and drawing all inferences in her favor, the Court finds that Defendant Wexford may be subject to punitive damages. Although the Court evaluates Plaintiff's § 1983 claim against Defendant Wexford under municipal liability standards, this does not mean that Defendant Wexford is *per se* a municipality. Without more from Defendant, the Court cannot say that Defendant Wexford is not a corporation that contracts to provide medical services to the inmates of the Erie County Prison. Accordingly, Plaintiff's claim for punitive damages must proceed.

3. Plaintiff's 42 U.S.C. § 1983 Claim against Defendant Peterson in his Official Capacity (Count V).

Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. N.Y. City Dep't of Social Servs.*, 436 U.S. 658, 690 n.55 (1978). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *see also Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (A suit against "a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.").

Thus, Plaintiff's official-capacity claim against Defendant Peterson is equivalent to Plaintiff's claim against Defendant Wexford. Accordingly, Plaintiff's official-capacity claim against Defendant Peterson is permitted to proceed. *See, e.g.*, *Owens v. City of Phila.*, 6 F. Supp. 2d 373, 387 (E.D. Pa. 1998) (merging § 1983 claim against the City with official-capacity claims against prison officials).

4. Plaintiff's 42 U.S.C. § 1983 Claim against Defendant Peterson in his Individual Capacity (Count V).

Two theories of supervisory liability under § 1983 apply in this case. Under the first theory, individual defendants who are policymakers may be liable "if it shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" *In re J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)); *see also Owens*, 6 F. Supp. 2d at 394 (finding no liability when record failed to show that supervisory officials *established* or *maintained* the practices/customs that caused the constitutional injury). Under the second theory, a supervisor may be liable "if he

or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violation." *In re J.M.K.*, 372 F.3d at 586; *see also Colburn I*, 838 F.2d at 673 (dismissing claims because complaint lacked allegations that officials were personally involved in any activity related to detainee's death).

In Count V, Plaintiff brings an individual-capacity claim against Defendant Peterson, the Medical Director of Wexford. In her Opposition to Defendant Peterson's Motion to Dismiss, Plaintiff avers that Defendant Peterson's supervisory role signifies that Defendant Peterson knew or should have known that Mason was vulnerable to suicide. (Doc. No. 113, at 12). Plaintiff further contends that the responsibilities of effectuating and/or promulgating an adequate suicide prevention policy fall within the purview of a Medical Director's duties. (*Id.* at 14). In response, Defendant Peterson, among other things, avers that he did not have any professional contact with Mason, that he was not contacted by prison staff or medical staff regarding Mason, and that he was not made aware of Magistrate Judge Krahe's call. (Doc. No. 82, at 6).

The Court recognizes that Plaintiff's Second Amended Complaint seldom mentions Defendant Peterson by name; however, the Court cannot say, at this stage, that Defendant Peterson is not liable under either theory of supervisory liability. Given that case law turns on the supervisor's role in establishing or maintaining the policies and/or customs at issue, *see, e.g.*, *Owens*, 6 F. Supp. 2d at 394, or the supervisor's involvement with the decedent, *see, e.g.*, *Colburn I*, 838 F.2d at 673, the Court finds that this issue must proceed to discovery.

>    5. Plaintiff's Request for Punitive Damages under 42 U.S.C. § 1983 against Defendant Peterson in his Individual Capacity (Count V).

As part of the § 1983 action set forth in Count V, Plaintiff seeks punitive damages from Defendant Peterson. A plaintiff may recover punitive damages from a municipal employee sued in his individual capacity in a § 1983 action "when the defendant's conduct is shown to be

motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983).

In accepting Plaintiff's alleged facts to be true and drawing all inferences in Plaintiff's favor, the Court cannot say at this preliminary stage that Defendant Peterson did not act with "reckless or callous indifference" to Mason's federally protected rights. While the Court recognizes that Plaintiff's Second Amended Complaint rarely mentions Defendant Peterson by name, disposition of this issue is better suited to occur after discovery and/or on summary judgment. The Court therefore will not dismiss at this time Plaintiff's request for punitive damages from Defendant Peterson in his individual capacity.

6. Plaintiff's 42 U.S.C. § 1983 Claims against Defendants Wexford Employees in their Official Capacities (Count V).

Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell*, 436 U.S. at 690 n.55. "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Graham*, 473 U.S. at 166; *see also Will*, 491 U.S. at 71 (A suit against "a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."). Thus, Plaintiff's official-capacity claims against Defendants Wexford Employees are equivalent to Plaintiff's claim against Defendant Wexford. Accordingly, Plaintiff's official-capacity claims against Defendants Wexford Employees are permitted to proceed. *See, e.g.*, *Owens*, 6 F. Supp. 2d at 387.

7. Plaintiff's 42 U.S.C. § 1983 Claims against Defendants Wexford Employees in their Individual Capacities (Count V).

In Count V, Plaintiff brings individual-capacity claims against Defendants Wexford Employees. In order to establish a violation of Mason's constitutional right to adequate medical

care, "evidence must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale*, 318 F.3d at 582.

In *Farmer v. Brennan*, 511 U.S. 825, 837 (1994), the Supreme Court defined "deliberate indifference" more precisely. Specifically, the Court held that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." *Id.* In *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001), the Third Circuit explained the *Farmer* holding, stating that the "knowledge element of deliberate indifference is subjective, not objective." The Third Circuit continued, "subjective knowledge on the part of the official can be proved by circumstantial evidence to the effect that the excessive risk was so obvious that the official must have known of the risk." *Id*.

In Count V, Plaintiff alleges that Defendants Wexford Employees acted with deliberate indifference to Mason's serious medical needs. In support of this claim, Plaintiff pleads as follows: (1) Defendant Lininger medically evaluated Mason while he was under the influence of drugs; (2) Defendant Lininger documented Mason's history of outpatient mental health treatment; (3) Magistrate Judge Krahe contacted the Erie County Prison to inform staff that Mason threatened to kill himself; (4) Defendants Wexford Employees Nicole Kilbane, Michelle Hetrick, Adele Burnett, Michelle Thomas, Marjo Passamonte, and Jennifer Harvey each evaluated Mason thereafter but focused only on his opiate withdrawal; and (5) Mason was not placed on a Level I Suicide Watch. (Doc. No. 57, ¶¶ 43, 46, 53, & 59). In response, Defendants Wexford Employees contest the underlying factual claims as they relate to Defendant Lininger, and argue that the allegations against the remaining Wexford Employees are conclusory. (Doc. No. 111, at 3, 6-7).

In response to Defendants' arguments, and as mentioned previously, the Court accepts as true the facts alleged in Plaintiff's Second Amended Complaint and draws all inferences in Plaintiff's favor at this preliminary stage. Therefore, the Court determines that Plaintiff sufficiently pleads enough facts to show a plausible claim for relief.

### B. Plaintiff's State Law Claims.

#### 1. Plaintiff's Medical Negligence Claim against Defendant Wexford (Count VI).

It is well settled that an employer may be held "'vicariously liable for the negligent acts of his employee which cause injuries to a third party, provided that such acts were committed during the course of and within the scope of employment.'" *Scampone v. Grane Healthcare Co.*, 11 A.3d 967, 991 (Pa. Super. Ct. 2010) (quoting *Sutherland v. Monongahela Valley Hosp.*, 856 A.2d 55, 62 (Pa. Super. Ct. 2004)).

In Count VI, Plaintiff brings a claim of medical negligence, alleging that Defendant Wexford, through Defendants Wexford Employees, failed to: administer a proper medical examination; identify Mason as a suicide risk; recommend that Mason undergo a mental health assessment; place Mason on suicide watch; review Mason's initial intake records and/or his past mental health treatment records; consult with Mason's mental health providers; and provide proper medical treatment. (Doc. No. 57, ¶¶ 143(a)-(l)). In response, Defendant Wexford contends that Plaintiff is barred from bringing a medical negligence claim by the Pennsylvania Political Subdivision Tort Claim Act ("PSTCA"), 42 Pa.C.S. § 8541 *et seq.*, and the Mental Health Procedures Act ("MHPA"), 50 P.S. § 7101 *et seq*.

*(a) Pennsylvania Political Subdivision Tort Claim Act.*

PSTCA provides, in pertinent part, that "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an

13

employee thereof or any other person." 42 Pa.C.S. § 8541. Plaintiff argues that the PSTCA is inapplicable here because Defendant Wexford is an independent contractor. (Doc. No. 101, at 13). Under the PSTCA, employee is defined as:

> Any person who is acting or who has acted on behalf of a government unit whether on a permanent or temporary basis, whether compensated or not, and whether within or without the territorial boundaries of the government unit, including any volunteer fireman and any elected or appointed officer, member of a governing body or any other person designated to act for the government unit. *Independent contractors under contract to the government unit and their employees and agents and persons performing tasks over which the government unit has no legal right of control are not employees of the government unit.*

42 Pa.C.S. § 8501 (emphasis added). To determine whether an employer-employee relationship or an independent-contractor relationship exists, the Court must analyze several factors, including:

> (i) who controls the manner of work to be performed; (ii) the responsibility for the result; (iii) the terms of agreement between the parties; (iv) the nature of the work or occupation; (v) the skill required for the performance; (vi) whether one is engaged in a distinct occupation or business; (vii) which party supplies the tools; (viii) whether payment is by the time or by the job; (ix) whether the work is part of the regular business of the employer; and (x) whether there is a right to terminate the employment at any time.

*In re Estate of Francis v. Northumberland Cnty.*, 636 F. Supp. 2d 368, 389-90 (M.D. Pa. 2009) (citing *Higby Dev., Inc. v. Sartor*, 954 A.2d 77, 85 (Pa. Commonw. Ct. 2008)). The Court finds it premature to engage in this fact-bound inquiry at the motion to dismiss stage, and therefore determines that Plaintiff's medical negligence claim cannot be dismissed but rather must proceed to discovery.

### (b) Mental Health Procedures Act.

The MHPA "establishes rights and procedures for all involuntary treatment of mentally ill persons, whether inpatient or outpatient, and for all voluntary inpatient treatment of mentally ill persons." 50 P.S. § 7103. The MHPA is wholly inapplicable to the present case. No proceedings for the involuntary examination or treatment of Mason were instituted while he was incarcerated.

*See, e.g.*, *Herman v. Cnty. of York*, 482 F. Supp. 2d 554, 567-68 (M.D. Pa. 2007) (finding MHPA inapplicable when evidence failed to show that prison instituted proceedings "for the involuntary examination and/or treatment" of inmate). And, Mason's interviews with Defendants Wexford Employees did not constitute voluntary inpatient treatment because they occurred as a result of his incarceration. *Id.* (finding that inmate's interactions with health staff did not constitute voluntary treatment because treatment was a result of incarceration). Accordingly, Plaintiff's medical negligence claim is not barred.

2. Plaintiff's Corporate Negligence Claim against Defendant Wexford (Count VII).

In Count VII, Plaintiff asserts a corporate negligence claim, alleging that Defendant Wexford failed to: select and retain competent physicians and staff; formulate policies that identify and treat inmates with suicidal vulnerabilities; and properly hire, train, and supervise Defendants' employees. (Doc. No. 57, ¶¶ 149(a)-(f)).

The Pennsylvania Supreme Court first recognized the doctrine of corporate negligence in a case holding that a hospital may be directly liable if it fails to uphold the proper standard of care. *Thompson v. Nason Hosp.*, 591 A.2d 703, 708 (Pa. 1991). Following this decision, lower Pennsylvania courts have extended the doctrine of corporate negligence to healthcare entities other than hospitals. *See, e.g.*, *Hyrcza v. W. Penn Allegheny Health Sys., Inc.*, 978 A.2d 961, 982 (Pa. Super. Ct. 2009) (finding that corporate negligence extends to medical professional corporations); *Shannon v. McNulty*, 718 A.2d 828, 836 (Pa. Super. Ct. 1998) (extending corporate negligence to an HMO). *But see Sutherland v. Monongahela Valley Hosp.*, 856 A.2d 55, 61-62 (Pa. Super. Ct. 2004) (refusing to extend corporate negligence to a physician's office).

In *Scampone v. Highland Park Care Center, LLC*, the Pennsylvania Supreme Court clarified its holding in *Thompson*, explaining that the "key to the Court's analysis was the

15

*relationship* between hospital and patient." 57 A.3d 582, 606 (Pa. 2012) (emphasis added). According to the *Scampone* Court, the proper inquiry to determine whether an entity is subject to the doctrine of corporate negligence is not whether the entity is a hospital or like a hospital, but rather whether a duty of care exists between the entity and the injured person. *Id.* at 605. To answer that inquiry, the *Scampone* Court instructs lower courts to apply Section 323 of the Restatement (Second) of Torts. *Id.* at 606.

Applying *Thompson* and *Scampone*, the Court finds that a duty of care exists between Defendant Wexford and Mason. Section 323 of the Restatement provides, in pertinent part, that one who "render[s] services to another which he should recognize as necessary for the protection of the other's person . . . is subject to liability . . . for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if his failure to exercise such care increases the risk of such harm." Restatement (Second) of Torts § 323(a). In the instant action, Defendant Wexford "renders services" that are "necessary for the protection" of inmates at the Erie County Prison. Failure to exercise reasonable care in performance of those services "increases the risk of [physical] harm" to inmates. Accordingly, the Court finds that the doctrine of corporate negligence extends to a prison's medical services provider, such as Defendant Wexford.

Once the Court finds a duty of care, the Court must evaluate the sufficiency of Plaintiff's corporate negligence claim. The elements of a corporate negligence claim are as follows: (1) the corporate entity had actual or constructive knowledge of defects or procedures that created the alleged harm; and (2) the corporate entity's negligence was a substantial factor in bringing about the alleged harm to the injured party. *Thompson*, 591 A.2d at 708. Plaintiff alleges that prior inmates lacking Suicide Watch have successfully committed suicide at the Erie County Prison, (Doc. No. 57, ¶ 64), that Mason's mental health history was documented during the intake process,

16

(*id.* ¶¶ 39, 43), and that Defendants Wexford and Wexford Employees knew of Magistrate Judge Krahe's call regarding Mason's suicidal threats yet did nothing to protect Mason, (*id.* ¶ 53). Such facts suggest that Defendant Wexford may be liable for corporate negligence. *See Thompson*, 591 A.2d at 709 (finding hospital may have been negligent in supervising the quality of care when staff were aware of patient's condition yet did nothing).[3]

## V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1. The Court **DENIES** the Motion to Dismiss by Defendant Wexford, (Doc. No. 70);

2. The Court **DENIES** the Motion to Dismiss, Motion to Strike, and Motion for More Definite Statement by Defendant Dr. Peterson, (Doc. No. 81); and

3. The Court **DENIES** the Motion to Dismiss by Defendants Meghan Lininger, Nicole Kilbane, Michelle Hetrick, Adele Burnett, Marjo Passamonte, Jennifer Harvey, and Michelle Thomas, (Doc. No. 110); and

4. The Court **GRANTS** Plaintiff's Motion to Strike, (Doc. No. 117).

**IT IS SO ORDERED.**

Dated: October 7, 2016

_____
BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE

---

[3] Defendant Wexford additionally argues that PSTCA and MHPA bar Plaintiff from asserting her corporate negligence claim. The Court applies the same reasoning in the preceding section to find that Plaintiff's corporate negligence claim is not barred.

17